IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INVISTA S.A R.L. and INVISTA (CANADA) COMPANY | : : : | |
| | : | C.A. No. 07-119 |
| Plaintiffs, | : : | |
| v. | : : | |
| FIBER RESOURCES INTERNATIONAL, INC., | : : | |
| Defendant. | : | |

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

COMES NOW, Defendant, Fiber Resources International, Inc. ("Fiber"), by and through its undersigned counsel, and for its Answer, and Affirmative Defenses to the Complaint, and its Counterclaim against Plaintiffs, states as follows, to wit:

Nature and Basis of Action

1. Admitted that the instant action is an action for breach of contract. Denied that this action is governed under New York law. The balance of the averments contained in this paragraph of the complaint are admitted.

The Parties

2. Admitted upon information and belief.

3. Admitted upon information and belief.

4. Admitted.

5. Admitted that W. Winston Briggs is the Registered Agent of Fiber in the State of Georgia. Denied that service of the complaint upon Mr. Briggs was proper.

Jurisdiction and Venue

6. Admitted that subject matter jurisdiction could lie in the Federal Courts on the basis of diversity of citizenship.

7. Denied that this Court has *in personam* jurisdiction over Fiber because the "Terms and Conditions" relied upon by Plaintiffs as the basis for *in personam* jurisdiction were not part of any purchase at issue in this action.

8. Denied.

Factual Background

9. Fiber is without sufficient information to admit or deny the allegations contained in this paragraph of the complaint.

10. Admitted only that some of the purchases of material by Fiber from Plaintiffs followed the procedures set forth in this paragraph of the complaint. According to Fiber's records, however, most of the purchases were handled by telephone.

11. Denied that Fiber received order acknowledgments or order responses from Plaintiffs for the purchases which are the subject of this action. Further denied that any of the order responses received on purchases contained the alleged "Terms and Conditions". Further denied that Fiber agreed to any of the alleged "Terms and Conditions".

12. Admitted that, on occasion, Plaintiffs would invoice Fiber at the time it shipped the materials. In most instances, materials were received by Fiber from Plaintiffs and resold before invoices were issued. On other occasions, Fiber personnel had to contact representatives of Plaintiffs and specifically request that invoices be issued. None of the invoices received concerning the materials which are the subject of this action contained any "Terms and Conditions". At no time did

Fiber agree to any of the "Terms and Conditions" alleged in the complaint. Further denied that the documents attached to the complaint as Exhibit "C" are authentic copies of what was sent to Fiber.

13. Admitted that between April and June 2006, Fiber purchased material from Plaintiffs in the cumulative amount of $589,471.26. Denied that order responses were received with respect to any of those purchases prior to the shipment of the materials. Denied that these purchases were subject to any "Terms and Conditions" as alleged by Plaintiffs. It is further denied that the documents attached as Exhibit "A" to the complaint are authentic copies of original documents. It is further denied that those documents, particularly the "Terms and Conditions" were attached to the order responses or otherwise sent to or received by Fiber, nor do these "Terms and Conditions" apply in any way to the purchases at issue.

14. Admitted that the material was accepted by Fiber, but not the "Terms and Conditions" of the purchase as alleged by Plaintiff.

15. Admitted that Fiber did not pay for the materials which are the subject of this action. Denied that such failure to pay was wrongful under the circumstances, in that Fiber has set-off claims and direct claims against Plaintiffs which equal or exceed the amount allegedly due for the materials supplied; all as more particularly set forth in the counterclaim.

16. Denied.

17. Denied that the "Terms and Conditions" were a part of any purchase at issue in this case.

18. Denied that the "Terms and Conditions" were a part of any purchase at issue in this case.

Count I - Breach of Contract

19.     No response is required.

20.     Admitted that Fiber purchased materials from Plaintiffs pursuant to individual transactions. Denied that the "Terms and Conditions" were part of the purchases as alleged in this paragraph of the complaint.

21.     Admitted that Plaintiffs shipped some of the material, and other material was picked up by Fiber. Denied that the order acknowledgments or invoices attached as exhibits to the complaint were a part of any purchase at issue in this case.

22.     Admitted that Fiber did not pay for the material. Denied that Fiber's failure to pay is wrongful.

First Affirmative Defense

Venue is improper in this district.

Second Affirmative Defense

Insufficiency of process.

Third Affirmative Defense

Fiber has set off claims which equal or exceed the main claim.

Forth Affirmative Defense

Insufficiency of service of process.

Fifth Affirmative Defense

The Court lacks *in personam* jurisdiction over Fiber.

<b>COUNTERCLAIM</b>

23.     Prior to 2002, Fiber owned a processing plant in Georgia that purchased material from

Plaintiffs' predecessor, DuPont Textiles ("DuPont"). Fiber would process that material and produce a fiber used to reinforce concrete ("concrete material"), which was used in various applications in the construction industry.

24. In 2002, Fiber and DuPont entered into an arrangement whereby Fiber would cease production of the concrete material, and provide DuPont with the information necessary to turn over production of the concrete material to DuPont, after which, Fiber's role would be to expand and service the existing market for the concrete material, and sell the concrete material produced by DuPont.

25. The arrangement was that Fiber would have the exclusive right to sell concrete material produced by DuPont in the market created by Fiber.

26. That arrangement was in place from and after 2002 and Fiber was very successful creating and servicing the market for the concrete material produced by DuPont.

27. At the time of this arrangement, Fiber requested that the exclusivity arrangement be reduced to writing. The representative at DuPont told Fiber that a writing was not necessary, and Fiber was assured that DuPont would give Fiber the exclusive right to sell the concrete material in the market that Fiber developed.

28. One of Fiber's largest customers for the concrete material which was developed after the exclusivity relationship was entered into was a firm called Nycon.

29. DuPont subsequently sold its fibers business to the Plaintiff, including the portion which produced the concrete material.

30. Fiber, DuPont, and Plaintiffs, operated under this exclusivity arrangement concerning the concrete material between 2002 and May 2006. In May 2006, Fiber learned for the first time that

Plaintiff were selling concrete material directly to Nycon, and possibly other customers developed by Fiber in direct violation of the exclusivity arrangement then in place. Plaintiffs have refused to abide by the exclusivity arrangement, and, upon information and belief, have continued to sell concrete material directly to customers developed by Fiber, including Nycon, since at least May 2006.

### Count I - Breach of Contract

31. Fiber repeats and re-alleges the averments contained in paragraphs 23 through 30 as if fully set forth herein.

32. Plaintiffs' sale of concrete material directly to Nycon, and other customers developed by Fiber, is a breach of the exclusivity agreement entered into by the parties, which had been effect for four years.

33. As a result of Plaintiffs' breach, Fiber has sustained damage to its business and has lost significant revenue it previously earned from such sales.

### Count II - Tortuous Interference with Contractual Relations

34. Fiber repeats and re-alleges the averments contained in paragraphs 23 through 33 as if fully set forth herein.

35. Fiber had an ongoing relationship with Nycon pursuant to which it would sell concrete material to Nycon as a part of its exclusivity arrangement with Plaintiffs. Plaintiffs were fully aware of the existence of the relationship between Fiber and Nycon.

36. Plaintiffs intentionally contacted Nycon, despite the exclusivity arrangement and the long standing contractual relationship between Nycon and Fiber, concerning the sale of the concrete material and caused Nycon to cease this long standing relationship with Fiber and purchase the

concrete material directly from Plaintiffs.

37. Plaintiffs were without justification in interfering with the relationship between Fiber and Nycon concerning the purchase and sale of the concrete material, and Fiber has been damaged as a result of Plaintiffs' interference.

### Count III- Tortuous Interference with Prospective Business Relations

38. Fiber repeats and re-alleges the averments contained in paragraphs 23 through 37 as if fully set forth herein.

39. Given the long standing relationship between Fiber and Nycon concerning the purchase and sale of the concrete material, Fiber had a reasonable probability and expectancy of a continued business relationship with Nycon into the foreseeable future.

40. Plaintiffs were well aware of the existence of the relationship concerning the purchase and sale of the concrete material between Fiber and Nycon since its inception.

41. Plaintiffs intentionally interfered with the relationship between Nycon and Fiber concerning the purchase and sale of the concrete material by selling the material directly to Nycon despite the exclusivity arrangement between Fiber and Plaintiffs.

42. As a result of Plaintiffs' conduct, Nycon has refused to purchase material from Fiber since approximately May 2006.

43. Fiber has been significantly damaged as result of Plaintiffs' conduct.

WHEREFOR, Defendant/Counterclaim Plaintiff, Fiber Resources International, Inc., prays that Plaintiffs take nothing by way of the main claim, and that the Court enter judgment in its favor, and against Plaintiffs, on the counterclaim for compensatory damages in the amount proved at trial, plus counsel fees, and costs, plus such other and further relief as the Court deems just and proper.

**LOSCO & MARCONI, P.A.**

 /s/ Thomas C. Marconi
Thomas C. Marconi, Esquire #2761
1813 North Franklin Street
P.O. Box 1677
Wilmington, DE  19899
(302) 656-2284 Phone
(302) 656-3081 Fax
Attorney for Defendant

Date: April 27, 2007
G:\Tom\Fiber Resources #6096\Pleadings Dist. Ct. 07-119\Answer, Affirmative Defenses and Counterclaim 4.26.07.wpd

**CERTIFICATE OF SERVICE**

  I, Thomas C. Marconi, Esquire hereby certify that on this 27th day of April, 2007 I caused a true and correct copy of the attached *Answer, Affirmative Defenses and Counterclaim* to be served via U.S. Mail, postage prepaid upon the following:

  Jeffery L. Moyer
  Steven J. Fineman
  Richrds, Layton & Finger
  One Rodney Square
  920 North King Street
  P.O. Box 551
  Wilmington, DE 19899

            /s/ Thomas C. Marconi
            Thomas C. Marconi, Esquire (#2761)